**D. A. FOSTER TRENCHING COMPANY, INC.**

v.

**The UNITED STATES.**

No. 327-70.

United States Court of Claims.

Feb. 16, 1973.

Jerry M. Hamovit, Cleveland, Ohio, attorney of record, for plaintiff, Michael D. Golden, Fort Leonard Wood, Mo., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant, Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

### OPINION

KASHIWA, Judge:

This is a suit for the recovery of federal income taxes and interest in the amounts of $9,863.80 and $2,078.68 paid by the plaintiff for its fiscal years ended January 31, 1966, and January 31, 1967, respectively, plus interest as provided by law. The case is before the court on stipulated facts pursuant to Rule 134(b)(2) of the Rules of this court. For reasons hereinafter stated, we hold for the defendant and against the plaintiff and dismiss the plaintiff's petition.

The stipulated facts may be summarized as follows. During the years in question, the taxpayer was engaged in underground construction work for utility companies in the District of Columbia, Maryland, and Virginia, controlling approximately 40 percent of the market against three other competitors. The taxpayer's success, or at least the expeditious solution to a variety of excavation and construction problems, was and is dependent upon the cooperation of the utilities, their inspectors, engineers, and other supervisory personnel.

Since 1958, the taxpayer has owned and operated a 38-foot fishing boat, the DAF. During the years in question, plaintiff employed a captain to operate the DAF. The taxpayer makes no claim, however, that the captain had any familiarity with the underground construction business or entered into any discussions with the utilities' employees regarding such business.

The overall use of the boat was limited to day-long fishing trips by the taxpayer's own employees, as well as its customers, suppliers, and other business associates. Basically, attendance on the DAF involved three different groupings of the persons noted above. First, there were occasions when the boat was used as a recreational facility exclusively by the taxpayer's own employees. Second, there were other occasions when the boat was used by the business associates of the taxpayer, accompanied by the taxpayer's own employees. As to these two situations, which comprised 26 percent of the total costs and expenses for fiscal 1966 and 10 percent of the total costs and expenses for fiscal 1967, the District Director asserted no deficiency and has, in effect, conceded that these expenses were allowable.

On the majority of occasions, however, a third situation existed; that is, the use of the boat was exclusively by the taxpayer's business associates and without the presence of any employee of the taxpayer, save the captain. This situation existed 74 percent of the time during fiscal 1966 and 90 percent of the time during fiscal 1967. The availability of the boat for business associates was on a first-come, first-served basis. When no employees or officers of the plaintiff were present, there were no business meetings, negotiations, discussions, or other bona fide business transactions on the DAF (or on the same day) other than the entertainment of customers, suppliers, and business associates.

The District Director disallowed the pro rata portion of the expenses allocable to the instances when the boat was used by the business associates of the taxpayer without the presence of any of the taxpayer's officers or employees. The resulting deficiencies and interest for this 74 percent disallowance for fiscal 1966 and 90 percent disallowance for fiscal 1967 were assessed and paid. Timely claims for refund were denied and this suit was thus commenced.

Section 274 of the Internal Revenue Code of 1954, the relevant portions of which are reproduced below,[1] was added to the tax law by the Revenue Act of 1962. One of the avowed purposes of section 274 was to require certain expenditures otherwise deductible under sections 162[2] and 167[3] of the Code,[4] to meet a more stringent standard with respect to the proximate relationship of the expense to the active conduct of the business. This is made clear in the House Ways and Means Committee Report, where it is said:

> With respect to expenses for entertainment activities, the bill provides that a deduction will be allowed only to the extent that the taxpayer establishes that the *expense was directly related to the active conduct of his trade or business.* [The same "directly related" test is used in the treatment of entertainment facilities.] *This means that the taxpayer must show a greater degree of proximate relation between the expenditure and his trade or business than is required under present law.* * * * [H.R. Rep. No. 1477, 87th Cong., 2d Sess., 20 (1962–3 Cum.Bull. 405, 424.] [Emphasis supplied.]

Due to the relatively loose business connection required under section 162, significant abuses were found present with respect to expenses for entertain-

---

1. Sec. 274. Disallowance of certain entertainment, etc., expenses.
  "(a) Entertainment, amusement, or recreation.
  "(1) In general. No deduction otherwise allowable under this chapter shall be allowed for any item—
  "(A) Activity. With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or
  "(B) Facility. With respect to a facility used in connection with an activity referred to in subparagaph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,
  and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.
  * * * * *
  "(h) Regulatory authority.
  "The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, including regulations prescribing whether subsection (a) or subsection (b) applies in cases where both such subsection would otherwise apply."

2. Sec. 162. Trade or business expenses.
  "(a) In general.
  "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *"

3. Sec. 167. Depreciation.
  "(a) General rule.
  "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
  "(1) of property used in the trade or business, * * *"

4. The "ordinary and necessary" requirement of these expenses was deemed to be satisfied if the expenditure was "normal" and "appropriate and helpful" to the business. Commissioner v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171 (1943).

ment and facilities used in connection with such entertainment activity. In order to qualify as deductible, the expenses incurred by the DAF, a facility within the meaning of section 274(a)(1)(B), must pass two tests. The Government concedes the first of these, that the facility was used primarily for the furtherance of the taxpayer's trade or business. This concession merely amounts to an admission by the Government that more than 50 percent of the total calendar days of use of the DAF were days of business use, that is, for purposes considered ordinary and necessary within the meaning of section 162 and the regulations thereunder.[5]

The second test and crucial issue for our resolution is whether the item was "directly related" to the active conduct of the taxpayer's trade or business. Clearly, the degree of proximity required to pass the test of "directly related" is more strict than the old test of "ordinary and necessary." The Regulations enacted pursuant to section 274 explain the new standard.[6]

5. See Treas.Reg. § 1.274–2(e)(4) (1969).

6. § 1.274–2. *Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.*

 \*   \*   \*   \*   \*

 (c) *Directly related entertainment*—(1) *In general.* Except as otherwise provided in paragraph (d) of this section (relating to associated entertainment) or under paragraph (f) of this section (relating to business meals and other specific exceptions), no deduction shall be allowed for any expenditure for entertainment unless the taxpayer establishes that the expenditure was directly related to the active conduct of this trade or business within the meaning of this paragraph.

 (2) *Directly related entertainment defined.* Any expenditure for entertainment, if it is otherwise allowable as a deduction under chapter 1 of the Code, shall be considered directly related to the active conduct of the taxpayer's trade or business if it meets the requirements of any one of subparagraphs (3), (4), (5), or (6) of this paragraph.

 (3) *Directly related in general.* Except as provided in subparagraph (7) of this paragraph, an expenditure for entertainment shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that it meets all of the requirements of subdivisions (i), (ii), (iii) and (iv) of this subparagraph.

 (i) At the time the taxpayer made the entertainment expenditure (or committed himself to make the expenditure), the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (other than the *goodwill* of the person or persons entertained) at some indefinite future time from the making of the expenditure. A taxpayer, however, shall not be required to show that income or other

business benefit actually resulted from each and every expenditure for which a deduction is claimed.

 (ii) During the entertainment period to which the expenditure related, the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining such income or other specific trade or business benefit (or, at the time the taxpayer made the expenditure or committed himself to the expenditure, it was reasonable for the taxpayer to expect that he would have done so, although such was not the case solely for reasons beyond the taxpayer's control).

 (iii) In light of all the facts and circumstances of the case, the principal character or aspect of the combined business and entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business (or at the time the taxpayer made the expenditure or committed himself to the expenditure, it was reasonable for the taxpayer to expect that the active conduct of trade or business would have been the principal character or aspect of the entertainment, although such was not the case solely for reasons beyond the taxpayer's control). It is not necessary that more time be devoted to business than to entertainment to meet this requirement. The active conduct of trade or business is considered not to be the principal character or aspect of combined business and entertainment activity on hunting or fishing trips or on yachts and other pleasure boats unless the taxpayer clearly establishes to the contrary.

 (iv) The expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer engaged in the active conduct of trade or business during the entertainment or with whom the taxpayer establishes he would have engaged in such active conduct of trade or business if it

Treas.Reg. § 1.274–2(c)(3) (1969) seeks to define what will, in general, satisfy the requirement of "directly related." The taxpayer must meet all the requirements embodied in subdivisions (i) through (iv) of subparagraph (3) to pass this particular "directly related" test. The taxpayer, on the basis of the stipulation, clearly cannot satisfy the minimum prerequisite of subdivision (ii) of the regulation:

> (ii) During the entertainment period to which the expenditure related,

the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining such income or other specific trade or business benefit * * *.

The taxpayer has stipulated that

> * * * On those occasions when no employees or officers were present, there were no business meetings, negotiations, discussions or other bona fide business transactions on the

were not for circumstances beyond the taxpayer's control. For expenditures closely connected with directly related entertainment, see paragraph (d)(4) of this section.

(4) *Expenditures in clear business setting.* An expenditure for entertainment shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was for entertainment occurring in a clear business setting directly in furtherance of the taxpayer's trade or business. Generally, entertainment shall not be considered to have occurred in a clear business setting unless the taxpayer clearly establishes that any recipient of the entertainment would have reasonably known that the taxpayer had no significant motive, in incurring the expenditure, other than directly furthering his trade or business. Objective rather than subjective standards will be determinative. Thus, entertainment which occurred under any circumstances described in subparagraph (7) (ii) of this paragraph ordinarily will not be considered as occurring in a clear business setting. Such entertainment will generally be considered to be socially rather than commercially motivated. Expenditures made for the furtherance of a taxpayer's trade or business in providing a "hospitality room" at a convention (described in paragraph (d)(3)(i)(b) of this section) at which goodwill is created through display or discussion of the taxpayer's products, will, however, be treated as directly related. In addition, entertainment of a clear business nature which occurred under circumstances where there was no meaningful personal or social relationship between the taxpayer and the recipients of the entertainment may be considered to have occurred in a clear business setting. For example, entertainment of business representatives and civic leaders at the opening of a new hotel or theatrical production, where the clear purpose of the

taxpayer is to obtain business publicity rather than to create or maintain the goodwill of the recipients of the entertainment, would generally be considered to be in a clear business setting. Also, entertainment which has the principal effect of a price rebate in connection with the sale of the taxpayer's products generally will be considered to have occurred in a clear business setting. Such would be the case, for example, if a taxpayer owning a hotel were to provide occasional free dinners at a hotel for a customer who patronized the hotel.

\* \* \* \* \*

(7) *Expenditures generally considered not directly related.* Expenditures for entertainment, even if connected with the taxpayer's trade or business, will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business:

(i) The taxpayer was not present;

(ii) The distractions were substantial, such as—

(a) A meeting or discussion at night clubs, theaters, and sporting events, or during essentially social gatherings such as cocktail parties, or

(b) A meeting or discussion, if the taxpayer meets with a group which includes persons other than business associates, at places such as cocktail lounges, country clubs, golf and athletic clubs, or at vacation resorts.

An expenditure for entertainment in any such case is considered not to be directly related to the active conduct of the taxpayer's trade or business unless the taxpayer clearly establishes to the contrary.

"DAF" (or on the same day), other than the entertainment of customers, suppliers and business associates.

Significantly, subdivision (iii), in specifying that the principal character of the business and entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business, provides the following presumption:

> (iii) * * * The active conduct of trade or business is considered not to be the principal character or aspect of combined business and entertainment activity on hunting or fishing trips or on yachts and other pleasure boats unless the taxpayer clearly establishes to the contrary.

Unable to establish that the entertainment in issue can be considered directly related to the active conduct of its trade or business under Treas.Reg. § 1.274–2(c)(3) (1969), the taxpayer concentrates its argument on Treas.Reg. § 1.274–2(c)(4) (1969). Under this subparagraph,

> (4) * * * An expenditure for entertainment shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was for entertainment occurring in a clear business setting directly in furtherance of the taxpayer's trade or business. * * *

The plaintiff argues that if it comes within the "safe harbor" of Treas.Reg. § 1.274–2(c)(4) (1969) by establishing that the entertainment provided by the DAF was in a "clear business setting," then it has satisfied the "directly related" test. While as a general statement this is true, the plaintiff errs in focusing with almost exclusive emphasis on the following language of subparagraph (4):

> (4) * * * Generally, entertainment shall not be considered to have occurred in a clear business setting unless the taxpayer clearly establishes

that any recipient of the entertainment would have reasonably known that the taxpayer had no significant motive, in incurring the expenditure, other than directly furthering his trade or business. * * *

We view this language as merely providing one element in the definition of what might constitute a "clear business setting." If this were not the case, the taxpayer could succeed by a showing that the expenditures furthered simple good will, as is undoubtedly the circumstance in nearly every case of this type.

We find that the specific direction in subparagraph (4) to subparagraph (7) of the same paragraph (Treas.Reg. § 1.274–2(c)(7)(ii) is far more indicative of the true meaning of the term "clear business setting." Subparagraph (4) states that, ordinarily, entertainment which occurred under the circumstances described in subparagraph (7)(ii) will not be considered as occurring in a clear business setting. Those circumstances are:

> (ii) The distractions were substantial, such as

> (a) A meeting or discussion at night clubs, theaters, and sporting events, or during essentially social gatherings such as cocktail parties, or

> (b) A meeting or discussion, if the taxpayer meets with a group which includes persons other than business associates, at places such as cocktail lounges, country clubs, golf and athletic clubs, or at vacation resorts.

If a clear business setting is not ordinarily to be established in situations in which the distractions to business discussion or activity were substantial,[7] this is even more clearly the case when the representatives of the taxpayer were not on the DAF during the fishing trips. Representatives of the taxpayer would at least make business discussion or activity possible. Indeed, Treas.Reg. § 1.274–2(c)(7) (1969) entitled "Expendi-

---

7. See, in this context, Delores Bussabarger, 52 T.C. 819 (1969), where substantial distractions were held to preclude satisfaction of the "directly related" requirement *even though the taxpayer was present.*

tures generally considered not directly related," which we view as providing caveats in the interpretation of subparagraphs (3) and (4), states:

(7) * * * Expenditures for entertainment, even if connected with the taxpayer's trade or business, will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business:

(i) The taxpayer was not present;
* * *

It should further be noted that the examples provided by subparagraph (4) as to what type of entertainment will be considered as occurring in a clear business setting further confirm the Government's position. After rejecting those settings where distractions were substantial, subparagraph (4) provides a favorable exception:

(4) * * * Expenditures made for the furtherance of a taxpayer's trade or business in providing a "hospitality room" at a convention (described in paragraph (d)(3)(i)(b) of this section) at which goodwill is created *through display or discussion of the taxpayer's products,* will, however, be treated as directly related. * * * [Emphasis supplied.]

The present case, however, submitted on stipulation, provides no indication that there was any such substitute for the presence of the taxpayer's representatives. While it is true that the absence of these representatives does not automatically require disallowance, it is clear that the example contemplates the situation in which the showing of the taxpayer's products in a reasonable display area may engender a business discussion or activity.[8]

Treas.Reg. § 1.274–2(c)(4) (1969) provides another common example of what might satisfy the test of "directly related" under the category of "clear business setting":

(4) * * * In addition, entertainment of a clear business nature which occurred under circumstances where there was no meaningful personal or social relationship between the taxpayer and the recipients of the entertainment may be considered to have occurred in a clear business setting. For example, entertainment of business representatives and civic leaders at the opening of a new hotel or theatrical production, where the clear purpose of the taxpayer is to obtain business publicity rather than to create or maintain the goodwill of the recipients of the entertainment, would generally be considered to be in a clear business setting. * * * [Emphasis supplied.]

It is clear from the stipulation that the taxpayer in the case before us cannot make an argument that the entertainment contains any inherent advertising advantages. In fact, the taxpayer is frank to admit that

* * * A major purpose for Plaintiff's ownership and use of the "DAF" in the years in question was the maintenance of satisfactory business relationships with customers, suppliers, and business associates of the Plaintiff. * * *

We find that the amounts in issue, not being directly related to the active conduct of the taxpayer's trade or business, are precluded from deductibility by section 274 and the regulations thereunder. The petition is hereby dismissed.

8. See Bywater Sales and Service Co. v. Commissioner, 24 CCH, TCM 849 (1965), decided under the pre-section 274 law, where the taxpayer showed clients his products on off-shore rigs while on a fishing trip.