654 P.2d 292

**UNIGARD MUTUAL INSURANCE COMPANY, a Washington corporation, Plaintiff-Appellee,**

v.

**Phillip C. MARTIN, Defendant-Appellant.**

**No. 1 CA–CIV 5303.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 19, 1982.

Lewis & Roca by John P. Frank, Walter Cheifetz, Thomas C. Horne, Foster Robberson, Phoenix, for plaintiff-appellee.

Stewart & McLean, Ltd. by Harry A. Stewart, Jr., William H. McLean, Phoenix, for defendant-appellant.

## OPINION

RICHARD M. DAVIS, Judge Pro Tem.

The question in this case is whether, under a policy of liability insurance issued to a corporate business and its sole owner which excluded from coverage "[a]ll personal acts and activities" of the individual owner "not in direct conduct of the business", the insurer could be liable for the owner's negligence in operating a boat on a businessmen's annual fishing trip. We conclude as did the trial court, that it cannot.

Kirby Martin and his wife are the sole stockholders in Dyna-Form Industries, Inc., a Phoenix enterprise engaged in making and installing aluminum patio covers, carports and the like. Kirby Martin is the president and treasurer of the corporation and is in charge of its sales program. In 1975, the plaintiff-appellee Unigard Mutual Insurance Co. issued a "Special Multi-Peril" insurance policy to "Dyna-Form Industries, Inc., Kirby Martin, an individual and Martin Brothers, Ltd." as its named insureds.[1] The policy included a general liability coverage for bodily injuries caused by the insured. The policy as issued also includes the following provision, on a separate sheet, entitled "Exclusion of Personal Liability":

> In consideration of the premium for which this policy is written, it is understood and agreed that coverage hereunder shall not apply to the Individual and Spouse named below with respect to:
>
> *    *    *    *    *    *
>
> 2.    All personal acts and activities not in direct conduct of the business of the named Insured;
>
> *    *    *    *    *    *
>
> Named Individual and Spouse      KIRBY MARTIN

In April, 1978, during the term of the policy, Kirby Martin and his father, the defendant-appellant Phillip C. Martin, went on a fishing trip to Lake Powell. This camping and fishing expedition was the annual outing of a group called the "Arizona Bass-Ters", comprised of 100 men engaged in business in the Phoenix area. Originally, the group consisted mainly of officers of Knoell Construction Co., a homebuilder, and its subcontractors. By 1978, some 10 years after its founding, the group included men engaged in a variety of other pursuits. The sole activity of the Bass-Ters as such was their one annual fishing trip to originally Roosevelt Lake, and later Lake Powell. Kirby Martin responded to questions directed to him in a sworn statement given to appellee's counsel following the accident as follows:

Q.  [by appellee's counsel]:  And what is the purpose of this group?

A.  Well, really it's R and R for a bunch of contractors and subcontractors that have worked together for years. It was started by the Knoell family of Knoell Homes, and at the time I was a subcontractor of theirs when it began and still do work for them.

And it just grew and grew with other contractors and businessmen that were more or less affiliated through the years until we cut it off at roughly 100 people due to the fact that we camp uplake 60 miles and it's pretty hard waiting on that many people.

*    *    *    *    *    *

Q.  And is the object of each year's outing to go out, have fun, and catch bass?

A.  Yes, I would say it's a combination of that and renewing associations with guys that you ·might not have seen all year that you have done some business with and only because you were so busy.

It's an outing of, as I said, businessmen, suppliers, and contractors that are in 90 percent of the cases somewhat affiliated, intermingled, or whatever. So, it's

1.    Martin Brothers, Ltd., has not been either identified or described in this litigation.

kind of a—it's a fun and business type thing. I would have to lean more towards fun, but there has been business derived out of the trip.

Kirby Martin was a Bass-Ter. Phillip Martin was not. Phillip accompanied his son on the fishing trip as a guest. Phillip was not and never had been an employee of Dyna-Form Industries. He was retired from other employment in California. Phillip paid his own trip expenses.

There was a banquet for the group on Wednesday night at the Wahweap Lodge on Lake Powell. The subject accident occurred on Thursday morning, while Kirby Martin was operating the boat he had brought to Lake Powell and Phillip Martin was sitting in the bow. The boat was titled in the name of Dyna-Form Industries, Inc. As the boat proceeded up-river toward the campsite, it hit an unexpectedly large wake and Phillip was thrown forcibly against the windshield and suffered severe injuries.

Phillip claimed coverage for his injuries under the Unigard policy on the basis of Kirby's asserted negligence. Unigard resisted the claim and filed the instant declaratory judgment proceeding. The trial court held on Unigard's motion for summary judgment that Kirby's acts were personal and not in the direct conduct of Dyna-Form's business, and that consequently there was no coverage by reason of the exclusion quoted above.

It is appellant's theory that the Bass-Ters outing, "although in part leisure, was, and for a number of years had been, an integral part of Kirby Martin's sales function at Dyna-Form Industries." In connection with that contention, appellant cites the following testimony given by Kirby at a deposition:

Q. And when you joined the Bass-Ters organization, insofar as your state of mind was concerned at that time, did you consider the Bass-Ters organization as a potential source of new business?

A. Yes. I did.

Q. Describe why the Bass-Ters organization was—you viewed it at that time as a potential source of new business.

A. Well, mainly in getting to know the principals more; the owner, Frank Knoell, and his son, who is running the operation, and the other management personnel who all went and developing a little better relationship and, hence, more business, which we did.

\* \* \* \* \* \*

Q. Would it be a fair statement to say that a significant element and the reason that you joined the Bass-Ters was the business potential that it presented to you?

\* \* \* \* \* \*

A. It was mutual thought. I had confidence there would be some business derived and that there would be some pleasure had.

A. And would the same be true as to the reasons that you continued with the Bass-Ters after you joined it; that you were confident that it would derive business in addition to being a function in which you'd have a fun time?

A. Yes.

Q. And, in fact, is that what has transpired over the eight or nine years that you have been associated with the Bass-Ters?

A. Yes, It has.

Initially, we note that in his reply brief, appellant makes a very short argument to the effect that the exclusion in regard to the acts of Kirby Martin only applies to him personally, and not to Dyna-Form Industries; which appellant perceives as being present at the fishing trip through its agent, Kirby Martin. This argument comes too late. It was not presented to the trial court, *see Sullins v. Third and Catalina Construction Partnership*, 124 Ariz. 114, 602 P.2d 495 (App.1979), and it was not presented in this court in appellant's opening brief. *See United Bank v. Mesa N.O. Nelson Co., Inc.*, 121 Ariz. 438, 590 P.2d 1384 (1979). We accordingly decline to consider it.

█ On the question effectively presented by the appeal, neither party has

found any authority closely in point.[2] Appellant has cited a number of workmen's compensation cases in support of an argument that the test should be whether Kirby Martin was in the course of his employment by Dyna-Form while he was on this fishing trip.[3] *Lawrence v. Industrial Commission,* 78 Ariz. 401, 281 P.2d 113 (1955); *Truck Ins. Exchange v. Industrial Commission,* 22 Ariz.App. 158, 524 P.2d 1331 (1974); *Lybrand, Ross Bros. & Montgomery v. Industrial Commission,* 36 Ill.2d 410, 223 N.E.2d 150 (1967); *Linderman v. Cownie Furs,* 234 Iowa 708, 13 N.W.2d 677 (1944). The workmen's compensation test is not the one to be applied here. In workmen's compensation proceedings, the objective is to have industry fully bear its share of human injury as a cost of doing business, and the compensation law is liberally construed to achieve that objective. *Ocean Accident & Guarantee Corp., Ltd. v. Industrial Commission,* 32 Ariz. 265, 257 P. 641 (1927). In the present case, by contrast, the rights of the parties are spelled out in a contract. Appellant has alluded to public policy as a reason not to construe the insurance contract as contended for by appellee, but insurance of this nature is not mandatory and where coverage is not publicly mandated the parties may contract as they see fit. *New York Underwriters Ins. Co. v. Superior Court,* 104 Ariz. 544, 456 P.2d 914 (1969). We must accordingly reject application of these authorities advanced by appellant.[4]

Somewhat more to the point in view of the language of the exclusion at issue here are the federal tax cases cited by appellee which construed 26 U.S.C. § 274(a)(1)(B) prior to its amendment in 1978. Prior to 1978, this section permitted deductions for entertainment and recreation expenses only when the expense was "directly related to the active conduct of ... business." Expenses incurred in social outings involving only casual business discussions were held nondeductible. *Hippodrome Oldsmobile, Inc. v. United States,* 474 F.2d 959 (6th Cir.1973); *St. Petersburg Bank & Trust Co. v. United States,* 362 F.Supp. 674 (M.D.Fla. 1973), aff'd. without opinion, 503 F.2d 1402 (5th Cir.1974), cert. denied, 423 U.S. 834, 96 S.Ct. 58, 46 L.Ed.2d 52 (1975); *D.A. Foster Trenching Co., Inc. v. United States,* 473 F.2d 1398 (Ct.Cl.1973).

In the final analysis, however, this case readily resolves itself. Although appellant claims ambiguity, we see none. The meaning of the contract and particularly the exclusion in question is readily ascertainable without reference to sources outside of the contract documents themselves. *See Bear Brand Hosiery Co. v. Tights, Inc.,* 605 F.2d 723 (4th Cir.1979); *Ranger Ins. Co. v. Lamppa,* 115 Ariz. 124, 563 P.2d 923 (App. 1977); *Hamada v. Valley National Bank,* 27 Ariz.App. 433, 555 P.2d 1121 (1976); *University Realty & Development Co. v. Omid-Gaf, Inc.,* 19 Ariz.App. 488, 508 P.2d 747 (1973).

Appellant's basic contention in this litigation calls to the fore the principle that language in an insurance contract, like that in any other contract, will be given its ordinary meaning and effect in the absence of a contrary indication. *Parks v. American Casualty Co. of Reading, Pa.,* 117 Ariz. 339, 572 P.2d 801 (1977); *Almagro v. Allstate Ins. Co.,* 129 Ariz. 163, 629 P.2d 999 (App.1981); *Brenner v. Aetna Ins. Co.,* 8 Ariz.App. 272, 445 P.2d 474 (1968); and see also *Brady v. Black Mountain Investment Co.,* 105 Ariz. 87, 459 P.2d 712 (1969).

The language of the exclusion is clear. The word "personal" is plainly to be contrasted with the later reference to "the business" in the context of this policy. The

---

2. *See,* however, *Employers Mutual Casualty Co. of Des Moines v. Kangas,* 310 Minn. 171, 245 N.W.2d 873 (1976) cited by appellee.

3. Appellant claims appellee stipulated that such was the relevant test in the trial court. We find no such stipulation. We find no indication that appellee relied upon any formulation other than the terms of the exclusion itself.

4. We emphatically agree, however, with Justice LaPrade's statement in *Lawrence v. Industrial Commission, supra,* that "[t]here is no requirement that every facet of employment be onerous." 78 Ariz. at 405, 281 P.2d 113.

**148**

term "direct conduct" is likewise clear in the context of the exclusion. "Conduct" used in this sense means "the act, manner, or process of carrying out (as a task) or carrying forward (as a business...)." "Direct" means "[p]roceeding from one point to another in time or space without deviation or interruption"; "leading by the short or shortest way to a point or end"; and "made, carried on, or effected without any intruding factor or intervening step." Webster's *Third New International Dictionary* (1969).

People characteristically separate their business or economic activities from their personal activities, but they do not always do so altogether. A happenstance meeting may result in the exchange of business cards at a Little League game. The draftsman of the exclusion at issue here has eliminated vast areas of doubt by use of the term "direct conduct of the business." Its application is clear in the present case.

While this fishing trip may have been more elaborate than some, it appears typical in its recreational orientation. Although it may have, even on an anticipatory basis, furthered business interests, it was an outing designed around the pursuit of fish. There was no organized business activity of any kind, and sport was clearly the major objective. Kirby Martin was primarily engaged in a recreational fishing expedition and only secondarily or indirectly involved in business. At the time of the accident, Kirby Martin was taking his father up-river to the campsite. In our opinion, anyone in the position of Kirby Martin reading the subject exclusion must have understood that he was not in either a general or specific sense in the "direct conduct" of the business of Dyna-Form Industries at the time. To otherwise construe the words would deny them their ordinary meaning.

Bearing in mind all the relevant rules for reviewing summary judgments, *see Livingston v. Citizens Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971), the judgment must be and is affirmed.

JACOBSON and GRANT, JJ., concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.