687 P.2d 933

**SCHAEFFER TRUCKING,**
**Petitioner Employer,**

**Fremont Indemnity Company,**
**Petitioner Carrier,**

v.

**INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**Lindy G. Aldridge, Respondent**
**Employee.**

**No. 17538–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 12, 1984.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioner employer and carrier.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jerome & Gibson by Don A. Fendon, Phoenix, for respondent employee.

CAMERON, Justice.

We granted Lindy G. Aldridge's petition for review of a memorandum decision of the Arizona Court of Appeals, Division One, setting aside an administrative law judge's decision that claimant's medical and compensation benefits should be suspended as of 23 April 1982. We have jurisdiction pursuant to Ariz. Const.Art. 6, § 5, and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We must decide the following issue:

Must medical or compensation benefits be terminated on the date a claimant first unreasonably refuses a particular medical treatment?

On 24 July 1980 claimant, while riding in the sleeper of a truck, was thrown into the "dog house," the housing covering the motor of the truck. He sustained injuries to his right shoulder and the lower part of his back. Several days after the accident claimant visited Dr. Robert C. Bright, a chiropractor who had treated claimant for many years. Dr. Bright examined the injured area and found it to be inflamed and swollen. Claimant filed a claim for benefits which was accepted by the carrier on 23 September 1980.

Although claimant's lower back condition improved as a result of Dr. Bright's treatments, his shoulder condition deteriorated. On 4 November 1980, and again on 16 January 1981, claimant saw Dr. Stephen R. Stein, an orthopedic surgeon, at the carrier's request. Dr. Stein concluded that claimant suffered a form of capsulitis of the shoulder and on 16 January 1981 recommended cortisone treatments. Claimant refused such treatments. The carrier unilaterally terminated claimant's benefits on 30 April 1981.

Administrative hearings were held on 3 December 1981, 8 January 1982, and 3 March 1982. During the last two hearings, claimant again stated that he would not undergo the cortisone treatment, testifying that three of his friends had died from cortisone injections similar to those recommended. Dr. Stein testified that the risks associated with the treatment were minimal.

On 23 April 1982, the administrative law judge issued his statement of findings which included the following:

11. As to whether or not applicant's present shoulder problem is stationary, Dr. Bright stated that in his opinion, applicant was in need of further chiropractic treatment. Dr. Stein stated that in his opinion, applicant's present problems could be helped by injections in the shoulder area with cortisone. * * *

Since it has been found that applicant's shoulder problem is an orthopedic problem, the testimony of Dr. Stein again is accepted * * * as being reasonable.

12. It is specifically found * * * as shown by the testimony of the applicant, together with the testimony of Dr. Stein, that applicant's shoulder problems have increased despite the treatments rendered to him by his treating physician, Dr. Bright. This finding is based upon applicant's testimony that his shoulder problem has become worse, together with the findings of Dr. Stein, who testified to the fact that in November of 1980, applicant had a good range of shoulder motion while in January of 1981, applicant had a condition known as a frozen shoulder. This condition was still present when applicant testified at the hearing in December of 1981. It is therefore found that applicant is in need of further active medical care by a qualified medical specialist.

13. However, applicant repeatedly stated during his testimony that he refused to undergo injections of cortisone in the shoulder area. Applicant stated that he based this refusal on the fact that he has known three friends who died because of injections of cortisone. On this issue, Dr. Stein testified to the minimal risks involved with the injection of cortisone. It is found * * * therefore, that the recommended treatment for applicant's shoulder does not involve any serious suffering or danger and that such treatment would reduce applicant's functional impairment of his right shoulder. Therefore, it is found that applicant's refusal to undergo such treatment is unreasonable and that his benefits should therefore be suspended pursuant to A.R.S. § 23–1026(E). See Arthur G. McKee & Company v. Industrial Commission, 24 Ariz.App. 218, 537 P.2d 603 (1975).

14. The Industrial Commission does have the power to temporarily suspend compensation benefits where the injured employee refuses to cooperate or ne-

glects to comply with reasonable recommendations for his medical treatment, which recommendations are designed for his benefit. *Steward v. Industrial Commission,* 69 Ariz. 159, 211 P.2d 217 (1949).

15. It is therefore found that since the applicant is now refusing to undergo recommended medical treatment, that his compensation benefits should be suspended. However, such compensation benefits must be restored if and when the applicant commences to undergo the necessary medical treatment recommended by a qualified medical specialist.

In summary, the administrative law judge found that claimant's rejection of the cortisone treatment was unreasonable under A.R.S. § 23–1026(E), and that his benefits should be suspended as of 23 April 1982, the date of the finding. The judge further found that the claimant's benefits would commence when claimant accepted treatment for his shoulder problem.

The carrier disagreed, in part, arguing that 16 January 1981, the date claimant first refused the cortisone treatment, should be the date for suspension of benefits. Upon administrative review, the award was affirmed. The carrier then petitioned the Court of Appeals for relief, and the Court of Appeals set aside the award, holding, in a memorandum decision, that 16 January 1981 was the proper date for termination of benefits. We granted the workman's petition for review.

At the outset it should be noted that the workmen's compensation statutes should be given a broad and liberal construction. *Peter Kiewit and Sons Co. v. Industrial Commission,* 88 Ariz. 164, 354 P.2d 28 (1960); *Flamingo Motor Inn v. Industrial Commission,* 133 Ariz. 200, 650 P.2d 502 (App.1982); *Unigard Mut. Ins. Co. v. Martin,* 134 Ariz. 144, 654 P.2d 292 (App.1982); *Pottinger v. Industrial Commission,* 22 Ariz.App. 389, 527 P.2d 1232 (1974). With this in mind, we consider the two statutes involved in this case:

Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who * * * refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery.

A.R.S. § 23–1026(E) and:

No compensation shall be payable for the death or disability of an employee if his death is caused by, or insofar as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent or reasonable surgical treatment or medical aid.

A.R.S. § 23–1027. Although not in sequence, it would appear that A.R.S. § 23–1027 is a substantive statute prohibiting payment when the workman unreasonably refuses to follow treatment, and A.R.S. § 23–1026(E) sets forth the procedure to be followed in enforcing the substantive provision of A.R.S. § 23–1027.

■■■ Regarding A.R.S. § 23–1027, our Court of Appeals has held:

[T]he Commission must determine if there has been neglect or unreasonable refusal to follow prescribed treatment, and, if so, at what point the claimant's condition becomes attributable to the claimant's unreasonable conduct rather than the job-related injury. Factors bearing on this are the degree of neglect or unreasonableness, the normal or expected recovery period, the complexity of the treatment, and the degree of difficulty in following it.

*Pima County Board of Supervisors v. Industrial Commission,* 27 Ariz.App. 680, 681, 558 P.2d 708, 709 (1976). Although we generally agree with this statement, we believe that "at what point the claimant's condition becomes attributable to the claimant's unreasonable conduct rather than the job-related injury" sets only an outer boundary for purposes of determining the date of benefit suspension. A.R.S. § 23–1027 must be read with A.R.S. § 23–1026(E) which states that *"upon * * * hearing, the commission may * * * suspend the compensation of an employee * * *."* (emphasis added) Logically this statute could be construed to hold that the

date at which benefits may be terminated will not occur until after a hearing and determination by the Commission that the refusal to accept treatment is unreasonable. We believe that such interpretation would be too restrictive. We read A.R.S. § 23–1026(E) to provide two things. First, a carrier may not unilaterally terminate a claimant's benefits, as was done in the present case. Second, the Commission *may* suspend benefits until the workman submits to treatment. This reading allows the Commission not only some leeway when determining whether to suspend benefits, but also in determining the proper date for suspension. We believe that the Commission may, based upon the facts of each case, suspend the benefits back as far as the claimant's first unreasonable refusal to accept a particular medical treatment, or it may choose as recent a date as the date of its finding.

This interpretation conforms to the purpose of the two sections of the statute—to require the injured workman to undergo such treatment as is reasonably necessary for recovery. Where, for example, the disability is serious and continuing and the treatment does not promise recovery, then, even though there can be a finding that the refusal for treatment is unreasonable, it would be contrary to the humanitarian and compassionate purposes for which the statute was enacted, *Bierman v. Industrial Commission,* 2 Ariz.App. 548, 551, 410 P.2d 666, 669 (1966), to relate the effective date of suspension back to the time of first refusal rather than the date of the hearing. This interpretation of the two statutes recognizes that there are degrees of unreasonableness and the Commission should be given wide latitude in determining when refusal of treatment is unreasonable. In the instant case, the workman appeared to have a good faith fear of the medical treatment even if not justified. We might view the matter differently if the workman's refusal of treatment was arbitrary and baseless.

██ We find that the administrative law judge's choice of a suspension date was reasonable. Although the judge ultimately accepted Dr. Stein's testimony and determined that claimant's refusal to undergo the cortisone treatment was unreasonable, it is apparent from the record that the claimant did have a good faith fear of the treatment. This is a proper consideration when making a decision as to when to suspend benefits. Also, the fact that claimant chose to follow the advice of his own doctor, Dr. Bright, who did not recommend cortisone treatment, may be considered in determining the date of suspension, as well as whether the refusal is unreasonable. "In general, if claimant gets conflicting instructions on treatment from different doctors, and chooses to follow his own doctor's advice, this is not unreasonable." 1 Larson, Workmen's Compensation Law, § 13.22 (1984).

In light of the entire record, we believe that the administrative law judge's decision to suspend claimant's benefits as of 23 April 1982 was reasonably supported by the evidence.

Award affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.