**PROPERTY OWNERS INS. CO., Plaintiff,**

**v.**

**Thomas COPE, d/b/a Cope Brothers Roofing, and Sheryl Olson Johnson, as personal representative of the Estate of Gregory Johnson, Deceased, Defendants.**

**No. H 90–193.**

United States District Court, N.D. Indiana, Hammond Division.

Sept. 4, 1991.

Robert J. Konopa, Butler, Simerie, Konopa & Laderer, South Bend, for plaintiff.

Michael S. Baechle, Merrillville, for defendants.

## OPINION AND ORDER

MOODY, District Judge.

This action is before the court on the plaintiff's "Motion for Summary Judgment," filed with supporting materials on June 28, 1991. The defendants responded in opposition on July 26, 1991, and the plaintiff's opportunity to file a reply brief passed unused on August 6, 1991.

## I. BACKGROUND

This is an action for declaratory relief, which seeks to determine the parties' rights and liabilities under an insurance contract. The plaintiff contracted to provide liability insurance to defendant Cope. The contract excluded coverage except for liability "with respect to the conduct of a business" owned by Cope.

During the coverage period, Cope travelled to Montana with one Edward Urbanski, with whom Cope did significant business. In Montana, Cope snowmobiled with a party including Gregory Johnson. Johnson had an accident and died. His estate subsequently sued Cope in a Montana state proceeding.

The plaintiff asks this court to declare that it has no obligations to Cope under their insurance contract. Cope has counterclaimed, seeking compensatory and punitive damages for the plaintiff's alleged bad faith refusal to defend him.

The issues now before the court are (1) whether the insurance contract covered personal injury arising during the Montana snowmobiling trip, and (2) whether Cope should reach the jury with his claim for punitive damages.

## II. ANALYSIS

The court first sets forth the standard procedural rules controlling summary judgment. The court then discusses the merits of the motion.

## A. Procedure

Summary judgment under Federal Rule of Civil Procedure 56 is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A "material" fact is one "that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "genuine" dispute over a material fact is one that a reasonable jury could resolve against the movant. *Id.* In other words, the genuine dispute inquiry asks whether a factual dispute "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The evidence considered on a motion for summary judgment is made known to the court through supporting material filed by the parties. FED.R.CIV.P. 56(c) & (e); Local Rule 11. The moving party always has a burden of "informing the district court of the basis of its motion, and identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Beyond this burden of production, however, the movant's burden on summary judgment will depend on whether he has the burden of persuasion at trial.

■ If the movant has the burden of persuasion at trial, then his burden on summary judgment is aligned with his trial burden: to show through affirmative evidence that there is no genuine dispute concerning all the material elements of his claim or affirmative defense. *See, e.g., Lundeen v. Cordner*, 354 F.2d 401 (8th Cir.1966). If the movant does *not* have the burden of persuasion, however, his burden is reduced. In *Celotex*, the Court held that such movants need not produce affidavits or other supporting material negating the nonmoving party's claim. *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Thus, a motion for summary judgment may put a party to his proof merely by referencing a lack of evidence. The party resisting summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)). A party may not "avoid summary judgment by baldly asserting the existence of a disputed question of fact" because the district court "is not obligated to comb through the record for evidence." *Kaszuk v. Bakery & Confectionery Union and Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). If a non-moving party wishes the court to consider evidence, the party must bring that evidence to the attention of the court. However, the district court will make every reasonable inference in the non-moving party's favor. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1977); *Kaszuk*, 791 F.2d at 558.

■ Under Local Rule 11, moreover, the nonmoving party's response to the motion determines the scope of the court's summary judgment inquiry:

> In determining the motion for summary judgment, the court will assume the facts as claimed by the moving party are admitted to exist without controversy, except as and to the extent that such facts are actually and in good faith controverted in the "statement of genuine issues" filed in opposition to the motion, as supported by the depositions, answers to interrogatories, admissions and affidavits on file.

Thus, failure to dispute a fact asserted by the movant will establish the truth of that fact for summary judgment purposes.

With these procedural rules in mind, the court turns to the merits.

## B. Merits

The plaintiff argues persuasively that Indiana law controls this action on the insurance contract. The defendants do not address choice of law, but their brief relies on Indiana law. In these circumstance, finding no plain error in the parties' choice of law, the court will not delve into or upset their assumption. *See Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 299 (7th Cir.1985) (per curiam) ("Where the parties fail to raise a possible conflict of substantive laws, the better rule ... is that the substantive law of the forum controls."). Accordingly the court applies Indiana law to the two issues *seriatim.*

### 1. Scope of Contract Coverage

The plaintiff maintains that the Montana snowmobiling trip was a recreational event rather than "the conduct of a business" owned by Cope. Thus, argues the plaintiff, the Montana trip was not covered by the insurance contract. The defendants, however, maintain that Cope intended the Montana trip to advance both business and pleasure, thus bringing it under the policy.

The issue before the court is whether, as a matter of law, the Montana trip might constitute "conduct of a business" by Cope. If it may, as a matter of law, then the defendants are entitled to a jury finding on whether it did, as a matter of fact. If it may not, as a matter of law, then the plaintiff is entitled to summary judgment.

The parties have not briefed, nor has the court found, any Indiana law interpreting the words "conduct of a business" in the context of an exclusion in a contract to provide liability insurance to a business owner. The closest reported case is apparently *Unigard Mutual Ins. Co. v. Martin*, 134 Ariz. 144, 654 P.2d 292 (Ct.App.1982), cited by the plaintiff.[1] The evidence before the *Martin* court showed that the object of a large annual fishing trip was both recreation and the advancement of business. *Id.,*

654 P.2d at 293–94. On the trip at issue, the insured's father came along as a guest of his son. The father was not affiliated with the insured's business, and paid his own way. *Id.,* 654 P.2d at 294. While boating to camp, the father sustained injuries, allegedly due to the son's negligent handling of a boat titled to the son's business. *Id.* The father claimed coverage under his son's business liability insurance policy, and the insurer resisted the claim by filing a state declaratory judgment action. The trial court granted summary judgment in favor of the insurer, and the father appealed.

The *Martin* court of appeals focused on the express terms of the insurance contract, framing the issue as follows:

> The question in this case is whether, under a policy of liability insurance issued to a corporate business and its sole owner which excluded from coverage "[a]ll personal acts and activities" of the individual owner "not in direct conduct of the business," the insurer could be liable for the owner's negligence in operating a boat on a businessmen's annual fishing trip.

*Id.,* 654 P.2d at 293. The *Martin* court, like this court, initially found a dearth of caselaw on point. The father argued that coverage should be assessed under the same standard applied to workmen's compensation claims, such that coverage would exist if the insured was acting "in the course of his employment" by the insured business during the fishing trip. *Id.,* 654 P.2d at 295. The *Martin* court rejected this analogy, distinguishing the public policy motivating workmen's compensation from the private insurance context at issue:

> The workmen's compensation test is not the one to be applied here. In workmen's compensation proceedings, the objective is to have industry fully bear its share of human injury as a cost of doing business, and the compensation law is

---

1. This court initially notes that the *Martin* decision has only limited precedential value in these proceedings, and that the case has been cited only once in nine years. *Schaeffer Trucking v. Industrial Com'n of Arizona,* 141 Ariz. 408, 410, 687 P.2d 933, 935 (1984) (for the proposition

that the Arizona workmen's compensation statute should be broadly construed). Nevertheless, the court has afforded the *Martin* opinion that consideration due a ruling on a matter of first impression.

liberally construed to achieve that objective. In the present case, by contrast, the rights of the parties are spelled out in a contract. Appellant has alluded to public policy as a reason not to construe the insurance contract as contended for by appellee, but insurance of this nature is not mandatory and where coverage is not publicly mandated the parties may contract as they see fit.

*Id.* (citations and footnote omitted). The *Martin* court found an analogy to the law of federal taxation more persuasive:

Somewhat more to the point in view of the language at issue here are the federal tax cases cited by the appellee which construe 26 U.S.C. § 274(a)(1)(B) prior to its amendment in 1978. Prior to 1978, this section permitted deductions for entertainment and recreation expenses only when the expense was "directly related to the active conduct of ... business." Expenses incurred in social outings involving only casual discussions were held nondeductible.

*Id.* (citations omitted; ellipsis original). However, the *Martin* court ultimately relied on principles of contract construction rather than analogous law in holding that the father's injuries were excluded from coverage under the son's contract.

Appellant's basic contention in this litigation calls to the fore the principle that language in an insurance contract, like that in any other contract, will be given its ordinary meaning and effect in the absence of a contrary indication....

The language of the exclusion is clear. The word "personal" is plainly to be contrasted with the later reference to "the business" in the context of this policy. The term "direct conduct" is likewise clear in the context of the exclusion. "Conduct" used in this sense means "the act, manner, or process of carrying out (as a task) or carrying forward (as a business ...)." "Direct" means "[p]roceeding from one point to another in time or space without deviation or interruption"; "leading by the short or shortest way to a point or end"; and "made, carried on, or effected without any intruding factor or intervening step."

*Webster's Third New International Dictionary* (1969).

People characteristically separate their business or economic activities from their personal activities, but they do not always do so altogether. A happenstance meeting may result in the exchange of business cards at a Little League game. The draftsman of the exclusion at issue here has eliminated vast areas of doubt by use of the term "direct conduct of the business." Its application is clear in the present case.

While this fishing trip may have been more elaborate than some, it appears typical in its recreational orientation. Although it may have, even on an anticipatory basis, furthered business interests, it was an outing designed around the pursuit of fish. There was no organized business activity of any kind, and sport was clearly the major objective. Kirby Martin [the son] was primarily engaged in a recreational fishing expedition and only secondarily or indirectly involved in business. At the time of the accident, Kirby Martin was taking his father upriver to the campsite. In our opinion, anyone in the position of Kirby Martin reading the subject exclusion must have understood that he was not in either a general or specific sense in the "direct conduct" of [his] business ... at the time. To otherwise construe the words would deny them their ordinary meaning.

*Id.,* 654 P.2d at 295 (citations omitted).

Applying *Martin* to this case the court readily distinguishes the Arizona precedent on its facts. The contract in *Martin* expressed an exclusion for "[a]ll personal acts and activities" of the individual owner "not in direct conduct of the business." The *Martin* court relied heavily on this particular wording in making its most important analytical point—namely, that the insurance contract was not ambiguous, but plainly excluded the fishing trip by its express terms. The *Martin* court focused especially on the words "direct conduct" in the exclusion before it, defining each word at length, and with particular emphasis on the word "direct." In the case at bar, the

contract language is different, the limitation on coverage arising by negative implication from the words "only with respect to the conduct of a business." The word "direct" does not modify "conduct" in this case, nor does the contract expressly contrast personal and business activities. Accordingly, the *Martin* case does not present a perfect template for dealing with this action.

The distinction just made might be said to rely too heavily on "magic words." However, this court's distinction is no more at fault in that respect than the *Martin* court was in standing its decision on the close parsing of a few words in the insurance contract before it. The *Martin* opinion, moreover, seems to misapply the law of summary judgment, at least as it is understood in the federal courts. The *Martin* court held, as a matter of law, that the contract exclusion applied to the fishing trip at issue. However, the *Martin* court went on to take some pains at explaining that the primary objective of the fishing trip was recreation rather than profit. Now, if the holding of *Martin* is that the particular language at issue excludes coverage of all activities advancing mixed purposes of recreation and profit, then the decision is a completely coherent review of a summary ruling. However, if the Arizona precedent holds that such mixed purpose activities may or may not be excluded by the language at issue depending on which purpose predominates, then, given the conflicting evidence in the *Martin* record, established summary judgment principles would require the court to draw every reasonable inference in favor of the non-moving party and remand the case for proper fact-finding at a trial on the merits.

■ The *Martin* opinion undermines the force of its own logic by attempting to determine on appeal the true nature of the fishing trip. The court believes that this weakness in the *Martin* court's opinion reflects the precarious nature of its interpretation of the contract's "ordinary meaning and effect." Whether or not the *Martin* court properly read the contract before it as unambiguous, however, the policy issue

before this court is not resolved by the familiar Indiana rule that where "an insurance contract is clear and unambiguous, the language therein must be given its plain meaning." *Southbend Escan Corp. v. Federal Ins. Co.*, 647 F.Supp. 962, 966 (N.D.Ind.1986) (citing, *inter alia, Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096 (Ind. 1985)). Specifically, this court holds that the words "with respect to conduct of a business" are, in this context, not sufficiently self-defining in their plain meaning. Rather, those words are ambiguous and require construction because reasonable persons might well differ on the question of whether they exclude coverage for activities furthering dual purposes of recreation and profit. *See Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467 (Ind.1985), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987) (policy ambiguous if reasonable persons may honestly differ as to meaning of policy language); *Sur v. Glidden–Durkee, a Div. of S.C.M. Corp.*, 681 F.2d 490, 496–97 (7th Cir.1982) (Indiana insurance policy ambiguous when, read as whole, reasonable people would differ on its meaning).

■ Construction of ambiguous policy language should be "resolved by the court as a matter of law." *Eli Lilly*, 482 N.E.2d at 471. Accordingly, under settled principles for the interpretation of ambiguous insurance contracts under Indiana law, this court construes the policy in favor of the insured. As the Indiana Supreme Court has explained: "The terms of an insurance policy should be interpreted most favorable to the insured if there is an ambiguity in the policy. An ambiguous insurance policy should be construed to further the policy's basic purpose of indemnity.... [and the] language should be strictly construed against the insurer." *Id.* at 470 (citations omitted). Thus, the court holds that the language of the contract before it does not exclude, as a matter of law, coverage for activities that serve dual purposes of recreation and profit. If insurance companies operating in Indiana desire the benefit of such an exclusion, it is a simple enough matter for them to draft their policies to unambiguously exclude coverage for recreational activities furthering business objec-

tives. The burden of making such exclusions clear is properly placed on the insurer, rather than the insured, to whom the Indiana courts have consistently extended the benefit of the doubt when construing ambiguous insurance policies. *E.g. Sur,* 681 F.2d at 499 (Indiana courts insist that "insurance company articulate with utmost clarity those risks that it does not intend to insure against in the policies it holds out for sale.").[2]

▆ In this case, the record on summary judgment reveals a genuine dispute over the factual nature of the Montana snowmobiling trip.[3] This dispute is certainly material, for the factual nature of the trip will, under the express terms of the contract at issue, determine the applicability of the policy's limit on liability. It remains, however, for the court to further explore the materiality of that dispute by detailing the applicable legal standard for assessing the facts. Where, as here, an insurer fails to unambiguously acquire an exclusion for activities advancing mixed purposes, what test does the law apply to the facts in determining whether coverage is excluded under a "conduct of business" exclusion? The *Martin* court, in this regard, paints an alarming picture of insurer liability leaping up in extreme situations, perhaps even with chance meetings at Little League games. On the other hand, if hypotheticals are brought to bear, this court can readily imagine a far different situation at the other extreme, one in which a business executive who enjoys his solitude, loathes the boors to whom he must sell his product, and hopes to retire at the earliest possible moment, must nevertheless occasionally invite customers to cock-

tails or sporting events for the purely fictional purpose of having fun. The *Martin* court, apparently concerned with the dubious horrors of the slippery slope, seems inclined to create a bright line rule denying coverage in both situations. Given the ambiguity in the contract at issue here, however, this court is prepared to seek out a test in the law capable of discriminating among situations of mixed profit and recreation motives.

The defendants in this case, like the defendants in *Martin,* advance the workmen's compensation test applied in Indiana for many years: Was the activity at issue "required by or incidental to" the insured's business. *U.S. Fiber Glass Indus. v. Berry,* 137 Ind.App. 302, 206 N.E.2d 888, 890 (1965) (sales manager directed to accompany boss and supplier to football game was covered by workmen's compensation en route). *See also Ski World, Inc. v. Fife,* 489 N.E.2d 72 (Ind.App.1986); *Keeling & Co. v. Roose,* 134 Ind.App. 369, 182 N.E.2d 807 (1962). The *Martin* court rejected this type of test because the liberal coverage policy motivating workmen's compensation statutes is not at play in a private insurance contract. In this case, however, the contract is ambiguous, which brings to bear Indiana's policy of construing insurance exclusions against insurers. Thus, a significant policy of Indiana insurance law—already employed in construing the contract to cover mixed motive activities—parallels the expansive coverage policy motivating workmen's compensation, and justifies application of the same test. Accordingly, this court holds that the test for coverage under the "conduct of a business" policy at issue is whether Cope's Montana

---

**2.** The drafting should pose no particular difficulty, e.g. "This policy does not cover liability arising from recreation or entertainment advancing the insured's business."

**3.** Cope's affidavit states that the trip had a business purpose:

¶ 2. At the time that I purchased the Business Owner's Policy ... from Property Owner's Insurance Company I expected that it would cover all aspects of running my business, including entertaining perspective [sic] and current clients.

¶ 4. [I]n February of 1989 I arranged a snowmobiling trip to West Yellow Stone,

Montana, and I invited Mr. Edward Urbanski on that trip for the purpose of discussing business with him and, in particular, discussing three jobs that were ongoing and that I wanted his opinion on.

¶ 5. I thought that this trip ... would be a good opportunity to talk business with Mr. Edward Urbanski because we would have lots of time together during the trip to discuss business.

The depositions on record, including those of Cope and Urbanski, suggest that the trip was also, perhaps primarily, designed for pleasure.

snowmobiling trip was necessary or incidental to the pursuit of profit through his business.[4]

Of course, nothing in this opinion should be read as establishing that the Montana snowmobiling trip was sufficiently related to the insured's business to support a jury verdict of liability under the policy. Rather, this opinion merely establishes the defendants' right to present their evidence against exclusion at trial. Should the defendants fail in their proof once the deferential prism of summary judgment law ceases to color their evidence, a directed verdict finding exclusion may well be appropriate.

### 2. Counterclaim Damages

■ The plaintiff argues that Cope's counterclaim is untenable as to punitive damages. The court's analysis of available damages on the counterclaim is simplified by the defendant's complete failure to address the issue. Under Local Rule 11, the plaintiff's statement of relevant facts is taken as true on this issue because it is completely uncontroverted. Accordingly, the court finds the following facts:

13. Thomas Cope filed a claim under the business owners policy with Property Owners on or about November 29, 1989.

14. Sherri Harsh, a field claim representative with Property Owners, investigated Mr. Cope's claim and concluded that coverage should be denied. She prepared a report to that effect which she forwarded to Property Owners' legal department.

15. Sherri Harsh based her recommendation upon her belief that the accident did not occur in the course of the conduct of Mr. Cope's business.

16. Property Owners' legal department agreed with Ms. Harsh's recommendation and coverage was initially denied to Mr. Cope.

17. Mr. Cope's attorney, John Donner, informed Property Owners on or about February 6, 1990 that he did not represent Mr. Cope on the merits of the lawsuit.

18. Property Owners received notice from Thomas Cope's attorney on April 17, 1990 which stated that Mr. Cope was not on a vacation when the accident occurred but was entertaining a client in the conduct of his business.

19. After receiving the attorney's letter, Sherri Harsh prepared a supplemental report to the insurance company's legal department which asked whether the denial of coverage should be reconsidered.

20. On May 9, 1990 the insurance company's legal department decided that Mr. Cope was entitled to a legal defense under a reservation of rights.

21. Mr. Cope was notified immediately that a defense would be provided to him under a reservation of rights.

22. The law firm of Landau, Brown, Planalp & Kommers in Montana was hired by property owners to defend Mr. Cope in the Montana litigation.

23. Property Owners has never received a bill for attorney fees incurred for the defense of Thomas Cope in the Montana litigation which it has not paid.

As ably briefed by plaintiff's counsel, Indiana law allows punitive damages on a contract claim only if special facts are proven by the claimant. As the Indiana Supreme Court has explained:

[W]hile punitive damages are not generally recoverable in contract actions, there are certain exceptions to 'this rule. Where the conduct of a party, in breaching his contract, independently establishes the elements of a common law tort, punitive damages may be awarded for the tort. Punitive damages may be awarded in addition to compensatory damages whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages.

*Art Hill Ford, Inc. v. Callender*, 423 N.E.2d 601, 602 (Ind.1981) (citations omit-

---

4. As for the *Martin* court's glancing reliance on a pre–1978 federal revenue test, this court is not persuaded that the often impenetrable, conflict-ing, and changeable policies motivating the federal tax law bear any persuasive relationship to Indiana's insurance law.

ted). Further, a party claiming punitive damages under Indiana law must establish the basis for his claim by clear and convincing evidence. *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349 (Ind.1982).

Applying Indiana law on punitive damages to the record in this action, as established by Local Rule 11, Cope has failed to carry his burden of establishing that there may be some factual basis for the punitive damages element of his counterclaim. In the absence of a genuine dispute over any fact relevant, let alone material, to this issue, the plaintiff is entitled to judgment as a matter of Indiana law that punitive damages are unavailable on Cope's counterclaim.[5]

### III. CONCLUSION

The court DENIES summary judgment on the issue of liability. The court GRANTS summary judgment to the plaintiff and against the defendants on the issue of punitive damages on the defendants' counterclaim.

---

**5.** Liability for compensatory damages is apparently still at issue under both the claim and the counterclaim.