[Cite as *Reese v. George*, 2014-Ohio-2760.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100276**

## AARON REESE

PLAINTIFF-APPELLEE

vs.

## THOMAS GEORGE, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-763595

**BEFORE:** Keough, J., S. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEYS FOR APPELLANT**

Donald P. Screen
Ashlie E. Case Sletvold
Subodh Chandra
Sandhya Gupta
The Chandra Law Firm, L.L.C.
1265 W. 6th Street
Suite 400
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**
**AARON REESE**

Jonathan E. Rosenbaum
9000 Gifford Road
Amherst, Ohio 44001

**ATTORNEY FOR APPELLEE**
**WESTFIELD INSURANCE CO.**

Cari Fusco Evans
Fischer, Evans, Robbins, Ltd.
4505 Stephen Circle, N.W.
Suite 100
Canton, Ohio 44718

**APPELLEE**

Mary Shannon Prada, pro se
22051 River Oaks Drive, Apt. B-1
Rocky River, Ohio 44116

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Thomas George ("George"), appeals from the trial court's judgment granting the motion for summary judgment of intervening defendant-appellee, Westfield Insurance Company ("Westfield"). Finding no merit to the appeal, we affirm.

## I. Background

{¶2} In September 2011, plaintiff-appellee Aaron Reese filed this lawsuit against George, Christopher Giannini, Paul Orlousky and his employer, TV station WOIO, Mary Shannon Prada, and Loren Kronen. Reese's complaint asserted claims for battery, civil liability for the alleged violation of certain criminal statutes, civil conspiracy, libel and slander, and invasion of privacy. George counterclaimed for defamation, maliciously attempting to influence a public official, and civil liability for criminal conduct.

{¶3} George, an American citizen of Syrian descent, is the chairman and CEO of the George Group, an umbrella corporation active in the food service, real estate development, and construction management industries. He has interests in corporations that operate bars, restaurants, and night clubs in Cuyahoga and Summit Counties. In the years following the September 11, 2001 terrorist attacks on the United States, George came to believe that his bar – restaurant businesses were being unfairly and unlawfully targeted by Ohio liquor-enforcement officials based on his Arabic ethnicity. He also believed that Reese, a member of the Ohio Department of Public Safety's investigative

unit ("ODPS"), played a part in the over-zealous law enforcement.

**{¶4}** In 2005 and 2008, George and his companies filed civil rights lawsuits in the Franklin County Court of Common Pleas and the Ohio Court of Claims alleging that the ODPS and its agents, including Reese, had engaged in a systematic effort to harass and intimidate them on the basis of their ethnicity. George also claimed that the Ohio Organized Crime Investigative Commission, a multi-agency task force that included agents from the ODPS investigative unit, was wrongly attempting to tie him to the illegal gambling and money-laundering activities of an individual with the same common Arabic surname. George ultimately settled his cases against the state in August 2011, after obtaining — in addition to monetary compensation — a written apology from the director of the ODPS.

**{¶5}** In May 2009, Reese resigned his position with the ODPS to enter the Cleveland police academy. He completed the academy in October 2009, but shortly thereafter was laid off for 11 months. While on layoff, he worked security for various private employers, including the Velvet Dog night club on West 6th Street in Cleveland's downtown warehouse district.

**{¶6}** Reese's complaint alleges that at approximately 11:30 p.m. on September 3, 2010, while he was working security at the Velvet Dog, George walked by with his wife, recognized him, and became enraged. According to the complaint, George made threatening statements to Reese, who subsequently filed a police report regarding the

incident and pursued a criminal complaint against George.

{¶7} According to Reese's complaint, after the Velvet Dog incident, George entered into a civil conspiracy with Giannini, a criminal investigator; Orlousky, a TV reporter; Prada, Reese's former girlfriend; and Kronen, Prada's friend; in a effort to discredit Reese and avoid prosecution. Specifically, the complaint alleges that Giannini investigated Reese at George's behest and, upon learning from Prada that Reese took steroids, reported the allegedly false allegations to the Cleveland police department, which initiated an internal affairs investigation of Reese that resulted in a five-day suspension. The complaint further alleges that Giannini, at George's direction, informed Orlousky that Reese had falsified his police department application, took steroids, was mentally unstable, and failed to make child support payments, and told him about a crude video about Reese that Kronen had posted on YouTube. According to the complaint, Orlousky and WOIO then published these allegations and raised concerns about Reese's fitness to serve as a Cleveland police officer.

{¶8} Reese's complaint alleges that the defendants' actions caused him discomfort, mental anguish, and damage to his professional and personal reputations, and seeks compensatory and punitive damages.

{¶9} Reese did not perfect service on Kronen; Prada never answered the complaint; and Giannini, Orlousky, and WOIO were dismissed on summary judgment. The trial court denied George's motions for summary judgment on the complaint and his

counterclaims.

{¶10} Westfield was granted leave to intervene to assert a claim for declaratory judgment that it had no duty to defend or indemnify George under a commercial general liability policy it issued to George's business entities. Westfield subsequently filed a motion for summary judgment, which the trial court granted, ruling that George was not entitled to a defense or indemnification because "the allegations against defendant George took place outside the scope of business conduct." This appeal followed.

## II. Analysis

{¶11} In his single assignment of error, George argues that the trial court erred in granting Westfield's motion for summary judgment.

{¶12} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶13} An insurance company has a duty to defend an action against its insured when the allegations of the complaint against the insured bring the action within the coverage of the insured's policy. *Motorists Mut. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874 (1973), paragraph two of the syllabus. If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action. *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, ¶ 19. But if the claims are clearly and indisputably outside the contracted coverage, there is no duty to defend or indemnify. *Id.*; *Zanco v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 115-116, 464 N.E.2d 513 (1984).

{¶14} The insurance policy at issue is a commercial insurance policy that was in effect from February 1, 2010 through February 1, 2011 and issued to Alfalfa's Enterprises, Inc. The policy sets forth a schedule of named insureds, all of which are entities rather than individuals. George is not listed as a named insured.

{¶15} The policy extends coverage to "insureds," which the policy states "means any person or organization qualifying as such under Section II – Who Is An Insured." Section II provides that:

1. If you are designated in the Declarations as:

\* \* \*

c. A limited liability company, you are an insured. *Your members are also insureds, but only with respect to the conduct of your business.* Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Emphasis added.)

{¶16} George concedes that he is not individually listed as a named insured but argues that Westfield has a duty to defend and indemnify him because he is an "insured" under the policy. He asserts that he is either the president, an executive officer or director, and a stockholder in most of the entities listed in the policy, and that officers, directors, and stockholders of the named insureds qualify as "insureds" "with respect to the conduct of your business" under the policy. George asserts that his alleged actions that gave rise to Reese's complaint were necessary and required by the fiduciary duties he owes to his businesses and were intended as a defense of his business interests as a result of Reese's "relentless campaign to harass and disparage them." Therefore, he contends that due to the "strong connection" between his business duties and his alleged conduct, he is an "insured" under the policy.

{¶17} Westfield does not dispute that George is an officer, director, and stockholder in most of the entities listed as named insureds. The issue, therefore, is whether George's alleged actions were taken "in the conduct of [the] business."

{¶18} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15

Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982).

{¶19} In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly intended from the face of overall contents of the contract. *Neal-Pettit v. Lahman*, 8th Dist Cuyahoga No. 91551, 2008-Ohio-6653, citing *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 216, 259 N.E.2d 123 (1970). As stated by this court in *Co. Wrench, Ltd. v. Andy's Empire Constr. Inc.*, 8th Dist. Cuyahoga No. 94959, 2010-Ohio-5790, ¶ 16, regarding the rules of insurance contract interpretation:

> When the language in a contract is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. If no ambiguity exists, however, the terms of the contract must simply be applied without resorting to methods of construction and interpretation. * * * [I]f a contract is clear and unambiguous, then its interpretation is a matter of law, there is no issue of fact to be determined, and a court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.

{¶20} Here, applying the plain meaning of the phrase "conduct of your business," we find that George's alleged actions were personal in nature and not related to his business interests. George's alleged threats to Reese at the Velvet Dog may have arisen out of Reese's past relationship with George's businesses, but were not made in defense of his businesses. Likewise, George's alleged attempts to discredit Reese after the

Velvet Dog incident did not involve any of George's businesses.

{¶21} George's own admissions and assertions in this case support this conclusion. In his motion for summary judgment, George stated that Reese's retaliation claim against him failed because there was no "factual nexus" between the incident at the Velvet Dog and his and Reese's prior history. Citing his deposition testimony, he stated that he had testified

> that he confronted Reese on the evening of September 3, 2010 because he believed that Reese had called him an "asshole" as he passed by the entrance to the nightclub. Reese admitted using this particular expletive to demean George in his presence on past occasions. George testified that he was particularly angered by Reese's use of the term on this occasion because the insult was directed at him in his wife's presence.

{¶22} We find nothing in George's description of the incident that would indicate that he responded to Reese's expletive in defense of his businesses. Rather, it is apparent that he took personal offense at Reese's name-calling.[1]

{¶23} George reiterated the personal nature of the Velvet Dog incident in his reply to Reese's brief in opposition to his motion for summary judgment:

> Obviously, George doesn't deny that Reese had dogged him for years as a foot soldier in the ODPS investigative Unit's improper permit enforcement activites, or in the Ohio Organized Crime Investigative Commission's unwarranted attempts to associate him with the crimes of Phillip George. And George doesn't deny that there was no love lost between the two, *but those activities, which according to Reese's own pleadings, occurred four*

---

[1]George would be understandably sensitive to Reese's name-calling. Reese was deposed in the 2005 and 2008 cases filed by George and referred to George on the record as an "asshole" and a "fucking asshole." He is also known to have publicly expressed his belief that George is a "terrorist" and a "criminal."

*to seven years prior to the Velvet Dog event, were not the reason George took umbrage with Reese on September 3, 2010.* George believed that Reese had directed a demeaning epithet at him as he passed the establishment in the company of his wife, an epithet that Reese had directed at George on past occasions — including in a 2009 deposition.

(Emphasis added.)

{¶24} Likewise, in arguing in his motion for summary judgment that Reese's libel and slander claims failed, George said that any of the alleged statements that form the basis of Reese's libel and slander claims were made in good faith "with an interest to rid law enforcement of a bad cop." Nowhere did he state that his motivation for the alleged statements was to protect or defend his businesses.

{¶25} George's counterclaim in this case also demonstrates that the dispute between him and Reese was personal in nature and not related to his businesses. George's counterclaim alleges that Reese filed a false police report about the Velvet Dog incident in 2010 and personally defamed him in 2012 by telling other police officers that he was "the biggest crook of all." Although the paragraphs setting forth the background to the counterclaim discuss Reese's alleged participation in the liquor-control inspections of George's restaurants, as well as the settlement of George's lawsuits against the ODPS, there is no mention of any involvement of George's businesses with respect to Reese's filing of the allegedly false police report in 2010 or his allegedly defamatory statements in 2012. Perhaps most significantly, the counterclaim seeks damages for George's "embarrassment, humiliation, and damage to his reputation," but does not assert any

damage to George's businesses as a result of Reese's actions nor seek any compensation for any business interest.

**{¶26}** George contends that the trial court should have found that his actions were business related because of Reese's prior harassment of his businesses. *Jones v. Am. Emp. Ins. Co.*, 106 Ohio App.3d 636, 666 N.E.2d 1152 (1st Dist.1995), is instructive on this issue. In *Jones*, two officers of a company had a business dinner and then got into a physical altercation after dinner as they were leaving the restaurant. The company officers subsequently brought a declaratory judgment action seeking a declaration that their company's insurer had a duty to defend and indemnify them in a lawsuit brought by an individual who was injured when he tried to break up their fight. The officers asserted that they were covered by the policy because there was "a relation" between the fight and the business. The trial court denied the insurer's motion for summary judgment.

**{¶27}** The First District reversed on appeal, holding that "[h]owever passionate company officers may be about their business views, a fist fight is almost always outside the scope of their business." *Id.* at 639. It further held that although the dinner may have been related to the business, the events leading up to the fight were not relevant, and the trial court should have focused on whether the fight *itself* was related to the business, not on the events leading up to the fight. *Id.* The court held that because there was no evidence that the fight was business related, the insurer had no duty to defend nor

indemnify the officers.

{¶28} In light of *Jones*, we conclude that although George and Reese's animosity may have originated in their prior business dealings, we must look to George's alleged actions themselves — and not to the events leading up to those actions — to determine whether they were business related or personal in nature. We find nothing to demonstrate that George's alleged threats to Reese at the Velvet Dog were related to his businesses. Nor do we find George's subsequent alleged attempts to discredit Reese to be related to his businesses. We are unpersuaded by George's argument that Westfield produced no evidence to defeat his affidavit attached to his motion for summary judgment, in which he averred that his actions were taken in defense of his businesses. As discussed above, George's own statements and admissions demonstrate that his actions were for purely personal reasons.

{¶29} Last, citing *Property Owners Ins. Co. v. Cope*, 772 F.Supp. 1096 (N.D.Ind. 1991), George argues that at a minimum, the phrase "conduct of your business" is ambiguous, and the trial court should have therefore denied Westfield's motion for summary judgment. In *Cope*, the insured, Cope, traveled to Montana with a business associate and snowmobiled with a group that included Johnson. Johnson had an accident and died, and his estate sued Cope. Cope was covered under an insurance policy that provided coverage for liability "with respect to the conduct of a business" owned by him. In deciding whether the policy covered Johnson's personal injury arising out of the

snowmobile trip, the court held that the words "with respect to conduct of a business" were, in the context of the snowmobiling trip, not sufficiently self-defining in their plain meaning. "Rather," the court said, "those words are ambiguous and require construction because reasonable persons might well differ on the question of whether they exclude coverage for activites furthering dual purposes of recreation and profit." *Id.* at 1101.

**{¶30}** But *Cope* does not support George's argument because it "merely shows that it may be possible for the words, 'with respect to conduct of a business' to be ambiguous." *Ohio Cas. Ins. Co. v. Logan*, Wash.App. No. 57506-6-I, 2007 Wash. App. LEXIS 225 (Feb. 12, 2007). They are not ambiguous in this context. The plain meaning of the phrase "conduct of your business" does not include George's alleged actions identified in Reese's complaint because, as discussed above, they were not taken with respect to the "conduct of [his] business" but were personal in nature. Therefore, George does not qualify as an insured under the policy, Westfield has no duty to defend or indemnify him in this action, and the trial court properly granted Westfield's motion for summary judgment. The assignment of error is therefore overruled.

**{¶31}** Judgment affirmed.

It is ordered that appellee Westfield recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, J., CONCURS
SEAN C. GALLAGHER, P.J., DISSENTS; (SEE ATTACHED DISSENTING OPINION).

SEAN C. GALLAGHER, P.J., DISSENTING:

{¶32} I respectfully disagree with the majority conclusion that George's alleged actions were personal in nature and not related to his business interests. I find it difficult to draw a bright line between the past conduct of both Reese and George in their respective professional roles and their conduct in front of the Velvet Dog and the subsequent legal actions they initiated.

{¶33} Although I agree with the majority's conclusion that there is personal animosity between these individuals, it is not so simple, in my mind, to remove the cloak of being a law enforcement officer from Reese or the cloak of being a business owner from George. Everything between these two individuals stems from Reese's original enforcement actions against George's businesses and George's attempts to discredit Reese's professional standing. The personal animosity is intertwined with their professional roles.

{¶34} Although the personal animosity between Reese and George was apparently on display in front of the Velvet Dog, George presented some evidence that his alleged

conduct was intended to defend his business interests and the history between these parties would support the conclusion that his actions were related to his business interests. I do not think it is clearly a matter of law that the alleged conduct was strictly personal. All the animosity on both sides originates from their professional roles.

{¶35} Because the alleged conduct arguably falls within the liability insurance coverage, Westfield must defend the action. Further, I do not believe it can be said that as a matter of law the policy exclusions apply.

{¶36} For these reasons, I respectfully dissent and would reverse the trial court's decision.